AMERICAN LOAN & TRUST CO. v. UNION DEPOT CO. et al.

(Circuit Court, D. Washington, E. D. April, 1897.)

1. MORTGAGE FORECLOSURES—WAIVER OF INTEREST—PAYMENTS BY RECEIVER.
When a suit for the foreclosure of a mortgage has been commenced, based on a default in payment of interest, the cause of action does not fail, and the right to maintain the suit is not waived, by the mortgagee's acceptance of interest, paid by a receiver of the property out of its current earnings, while other installments of past-due interest remain unpaid.

2. SAME—DEFAULT IN INTEREST—EFFECT OF PAYMENT.
Under the statute of Washington (2 Hill's Code, § 633), the effect of paying all sums due on a mortgage, pending a suit for its foreclosure, based on a default in interest or installments of principal, while other installments are not yet due, is to entitle the defendant to a stay of proceedings, not to a dismissal of the bill.

3. SAME—FORECLOSURE BY TRUSTEE—DECLARING PRINCIPAL DUE.
A mortgage of certain depot property, to secure an issue of bonds, provided that, on six months' default in interest or principal, the trustee might take possession, operate the property, apply the income to the payment of all sums due, and, if all such sums were paid before foreclosure or sale, restore the property to the mortgagor; or that, with or without entry, the trustee might sell the property, and apply the proceeds to the payment of the principal of the bonds (which should be deemed due at the time of the completion of the sale), with interest; and that the trustee might also bring suit for foreclosure, or employ any other legal remedies. *Held*, that under such mortgage, though the trustee might foreclose for nonpayment of interest, the principal debt could not be declared due, in advance of maturity, at any time prior to the completion of a sale of the mortgaged property.

4. SAME—DECREE OF SALE—RECEIVERS.
In a suit for the foreclosure of a mortgage covering real and personal property, it appeared, on final hearing, that the condition of the property in the hands of a receiver was prosperous and improving; that all arrears due on the mortgage, with costs, etc., could probably be paid out of the earnings in the course of about 18 months; and that there was a creditor of the mortgagor holding a judgment lien subsequent to the mortgage. *Held*, that as, under the rule in Hammock v. Trust Co., 105 U. S. 77, 94, there could be no redemption from a sale under a decree of foreclosure of the mortgage, the court, in consideration for the interests of the judgment creditor and the stockholders of the mortgagor corporation, would provide, by its decree of foreclosure, that no order of sale should issue for

18 months; that during that time any of the parties in interest might redeem by paying all sums due, with costs, etc.; that all available sums coming to the receiver's hands should be applied to the payment of the amounts due; and that, on payment of all such sums, the decree might be vacated.

Suit by the American Loan & Trust Company, as trustee, to foreclose a mortgage upon property of the Union Depot Company of Spokane Falls, given to secure negotiable bonds to the amount of $500,000, and coupons for interest to accrue semiannually. On final hearing.

Zera Snow, for complainant.

E. M. Carr, for defendant receiver of Seattle, L. S. & E. Ry. Co.

HANFORD, District Judge. The mortgage or trust deed sued upon covers a passenger and freight depot and railroad terminal grounds situated in the city of Spokane. The indebtedness which it was intended to secure is evidenced by negotiable bonds which, by the terms thereof, are to mature in the year 1919, and by coupons for interest payable every six months from July 1, 1889. The mortgage provides that if default be made in payment of any of said bonds, or of any installment of interest when the same shall become due and payable, and if such default shall continue for six months, upon the written request of the holders of one-fourth of the bonds then outstanding, the trustee may take possession of the mortgaged property, and operate the same, and receive the income therefrom, and apply the same to the payment of expenses and compensation of the trustee and taxes and all costs, and then to the payment of the interest in arrears, and then to payment of the principal, if any part of the principal shall be then due; and in case all sums of money for the time being due and payable on the said bonds, and all the said costs, charges, and expenses incurred by the trustee, shall be paid and satisfied before any foreclosure or sale, the trustee shall restore possession of the property to the depot company, and the same shall thenceforth be subject to the mortgage in the same manner as if such entry had not been made; and the trustee after such default may, in its discretion, upon like request, after entry or without entry, sell the property, with the appurtenances and franchises, as an entirety, and the proceeds of such sale shall be used to pay the expenses, costs, and charges, and then the remainder of the fund shall be applied "to the payment of the principal moneys secured by such of the bonds as shall then be outstanding (which principal moneys shall be deemed to be, and shall become, due and payable at the time of the completion of the said sale), and the interest thereon to that time"; and, if the amount be insufficient to make full payment, the moneys shall be applied ratably, or, in case of a surplus, the same shall be paid to the depot company. The mortgage also provides that the above methods of subjecting the security to the uses intended are not exclusive of other legal remedies, and the trustee may, in case of any default, bring a suit to foreclose the mortgage. The mortgage gives no express authority to the trustee or the bondholders to declare the principal due before the specified date of maturity,

except as above recited. After default had been made in the payment of interest coupons, this suit was commenced; but it was not pressed for several months, during which time no payments were made, and other coupons matured. Then an amended bill was filed, and an application was made to the court for the appointment of a receiver to take charge of the property, and manage the business during the pendency of the suit. The application was granted, and the court selected a disinterested receiver, who has been in charge of the property since about the 1st of September, 1894, during which time, from accumulated income over and above all current expenses and taxes and costs of necessary betterments and repairs, he has paid seven installments of interest, which includes all coupons matured up to the time of his appointment. The property is of great and increasing value, and the present outlook for business indicates that, with a continuation of good management, the income will be sufficient to pay, within the next 18 months, all interests on the bonded debt which will have accrued and become due, and it may be reasonably hoped that, after the interest in arrears shall have been paid, the coupons can be taken up as they mature, and funds can be accumulated to pay off the unsecured debts of the depot company. At the time of making application for the appointment of a receiver, it was shown, as one of the grounds for taking that step, that a judgment against the depot company for $15,000 had been obtained in an action for damages, and that an execution was about to be levied, which would interrupt the business of the company, and cut off its income. The owner of that judgment has since intervened in this cause, by a petition asking this court to order payment to be made out of moneys coming under its control; and upon that petition the court has made an order denying the petitioner's claim to priority over the mortgage debt, but allowing it as an established claim, to be paid out of any surplus moneys which may be left in the hands of the receiver or in the registry of the court after satisfaction of the mortgage. The original bill was against the depot company only, as sole defendant, but by the amended bill the Washington & Idaho Railroad Company and the Seattle, Lake Shore & Eastern Railway Company were brought in as parties defendant, for the reason that these corporations appeared to have an interest in the mortgaged property, evidenced by a contract by which they jointly leased the property for a period of 99 years, part of the consideration for said lease being their agreement to pay the interest as it should accrue on the mortgage bonds of the depot company. The Washington & Idaho Company has demurred to the bill, and the other defendants have answered. The main controversy in the case is as to the right of the complainant to maintain the suit since the bondholders have received and accepted payment of all interest which had accrued up to the time of filing the amended bill, and as to the right to a decree for a sale of the mortgaged property. By their answers, the depot company and the Seattle, Lake Shore & Eastern Railway Company both dispute the right to have a judicial sale of the whole or any part

of the mortgaged property. It is conceded by all parties that the nature of the property is such that it must be sold as an entirety, if sold at all. The case has been argued by counsel for the complainant and for the Seattle, Lake Shore & Eastern Company, and submitted by all parties upon the pleadings, proofs on the part of the complainant, and the whole record; and, by a stipulation, the complainant and the Seattle, Lake Shore & Eastern Company consent to consideration of facts shown by the reports of the receiver on file, for the purpose of estimating the value of the property and income derived and which may be derived from conducting the business of the depot company, and I have gathered the facts of the case as above recited from these sources of information.

My conclusions as to the rights of the respective parties, in view of the facts stated, are:

1. The depot company was in default for nonpayment of interest due when the suit was commenced, and when the amended bill was filed, and it is still in default for nonpayment of installments of interest which have become due since the date of filing the amended bill; and for said defaults the complainant was entitled to commence, and is still entitled to maintain, a suit in equity in this court to foreclose the mortgage.

2. The cause of action has not failed, and the right to maintain this suit has not been waived, by acceptance on the part of the bondholders of interest paid by the receiver out of the net income derived from use of the mortgaged property. In my opinion, the defendants are no more entitled to ask for a decree of dismissal, and to have possession of the mortgaged property restored to the depot company, while installments of interest past due remain unpaid, than they would be to maintain a bill to redeem against a mortgagee in possession, without tendering the full amount due. A statute of this state in force when this mortgage was given, and still in force, and which must therefore be read into the contract, provides that:

"Whenever a complaint is filed for the foreclosure of a mortgage upon which there shall be due any interest or installment of the principal, and there are other installments not due, if the defendant pay into court the principal and interest due, with costs, at any time before the final judgment, proceedings thereon shall be stayed, subject to be enforced upon a subsequent default in the payment of any installment of the principal or interest thereafter becoming due. In the final judgment, the court shall direct at what time and upon what default any subsequent execution shall issue." 2 Hill's Code, § 633.

Under this law, if all the coupons which have matured up to this time were paid, instead of rendering a decree of dismissal, the court would order a stay of proceedings.

3. Although the complainant has the right to foreclose this mortgage for nonpayment of interest, the principal debt is not due, and cannot be declared due, at any time prior to the completion of a sale of the mortgaged property, or the date of maturity specified in the mortgage.

4. The statutes of this state secure to mortgagors and their creditors the right to redeem real estate within one year after fore-

closure sales; but as this mortgage covers personal property as well as real estate, and as it must be sold as an entirety in order to prevent impairment of its value, the case comes within the rule of Hammock v. Trust Co., 105 U. S. 77, 94, in which case the supreme court decided that a foreclosure sale of such property must be absolute, notwithstanding a statute of the state in which the property is situated allowing mortgaged real estate to be redeemed after a foreclosure sale. Therefore, in view of the situation of all the parties, and the condition and value of the property, it would be contrary to the spirit of the law, and unjust, to sacrifice the interests of the intervener, who is a judgment creditor, and of the stockholders of the depot company, by a decree extinguishing the right of redemption in less time than one year; and if a year be allowed for redemption, and the usual time for publishing notice of the sale, then, by the time a sale can be completed and confirmed by the court, and possession delivered to the purchaser, the receiver will probably have collected sufficient funds to pay in full all interest due. At least one year should be allowed for redemption, and I consider that it will be fair and best for all parties to save the unnecessary expense of a sale, by delaying for a sufficient time to enable the receiver to satisfy all just demands of the complainant from the income. By adopting this plan, the bondholders will receive what is theirs; and they cannot well complain of injustice, for the parties to the mortgage contemplated this as one of the methods for collecting interest, and they will be compensated for delay by receiving interest on interest, as stipulated in their bonds and coupons.

In accordance with this opinion, the complainant may take a decree foreclosing the mortgage, but with a provision therein allowing the other parties until September 1, 1898, for redemption, by payment of all interest which shall have become due up to the time of redemption, and all taxable costs, and that an order of sale shall not issue prior to said date; and further providing that the receivership be continued, and that all moneys coming into the receiver's hands available for that purpose be applied to the payment of said interest; and further providing at the foot of the decree that the court reserves the right to vacate or modify the decree at any time, for sufficient cause, and that if the interest and costs, including such allowance as the court may make to the receiver for his compensation, and allowances to counsel entitled thereto, shall be paid before a sale can be actually made, the decree shall be vacated, and the receiver discharged, and the property restored to the depot company, and further proceedings stayed.